The opinion of the court was delivered by
Spencer, J.
Plaintiff is the holder of four promissory notes of $3375 *854 each, executed by the late L. A. Stafford, and secured by mortgage on the Edgefield plantation, in Rapides. The notes matured January 23d, February 23d, March 23d, and April 23d, 1861, and were duly presented' to George W. Stafford, dative executor of deceased, and by him duly acknowledged as just claims against the estate of L. A. Stafford on 20th December, 1865. The mortgage has been kept in full force by re-inscriptions from time to time. This suit is brought to enforce the said notes and mortgage on the said plantation, and to annul, or have declared inoperative, a certain tax-sale thereof, made December 13, 1875, to Mrs. Sarah C. Stafford, the widow in community of L. A. Stafford, and certain sales of portions thereof by her to other parties ; also to enjoin the tax-collector and Auditor from making or completing said sale to her. The executor and Mrs. Stafford pleaded a general denial and the prescription of five, and in this court, of ten years. The other defendants file a general denial.
As stated, these notes were formally presented to and acknowledged by the dative executor on 20th December, 1865. The present proceeding was commenced May 16, 1876. George W. Stafford qualified as dative executor of the estate of L. A. Stafford 2d October, 1865.
Between these dates no judicial proceedings were had upon these claims. The estate continued in the hands and under the control of the dative executor, who seems to have rendered no account of his administration, or done any other act looking to a settlement of its affairs. In November, 1875, the whole plantation was adjudicated to the State for several years delinquent taxes, which with the penalties were permitted to accumulate to amount of some $4000. The collector thereupon conveyed or sought to convey it, under act 105 of 1874, to Mrs: Stafford under circumstances hereafter to be stated.
The first question to be determined is that of the prescription of plaintiff’s debt; for if it be prescribed he is without interest 'to contest the sale to Mrs. Stafford or its effects.
We premise by stating that we do not consider the question as any longer an open one, as to the five-year prescription. It does not apply to a case like this. See 12 R. 507; 29 A. 495. We propose therefore to’ discuss the following questions:
First — Is the claim of plaintiff barred by the prescription of ten years? and.
Second — If so, from what date or event does that prescription begin to run ?
It may, we think, be conceded that the prescription of ten years is applicable to this debt, for it is one of that class denominated personal actions, which finds its prescription in the rule of art. 3544 C. C.
The real difficulty arises in determining the question when and in *855 what event does this prescription begin to run ? Is it from the date of the presentation to and acknowledgment by the administrator ? Or is it from the time the administrator renders 'his first account without placing thereon the claim so acknowledged, or is it from the date of his final account ? We confess that these questions are surrounded with many and grave difficulties, and that there are apparent conflicts in the adjudications bearing upon them. A safe rule under such circumstances is to resort to fundamental and original principles of the law, and ascertain which of the various theories best accords with these.
We think that the following proposition may be accepted as fundamental:
That an administrator or dative executor is an officer of the court, and primarily the representative of the creditors of the estate. The effect of an administration is to take the property of the deceased out of the custody and possession of his heirs and place it in the hands of a trustee for the benefit primarily of the creditors, to be by him administered under the supervision and control of the court. It is in its effects not dissimilar to a deposit in pledge for the security of the creditors of the estate. C. C. 2979 et seg. There is no philosophic reason for distinguishing the effects of such an administration from those which flow from the administration of the estates of insolvents in the hands of syndics. The objects and purposes of the law are the same in both cases, to wit, the preservation of the property and its distribution to those entitled to it. The methods of procedure are very similar, and in many respects identical. The only real difference in the two cases is that one appertains to the estate of a living, the other to that of a dead man ; the surplus of the estate after paying its charges is delivered in the one case to the living debtor, in the other to the heirs of the debtor. It has been said by this court, 2 A. 925, that “ the property of a succession is the common pledge of the creditors. That an administrator is the trustee of the creditors; his first duty is to them, and his imperative obligation is to watch over their interests.”
In 3 A. p. 531, the court say: “ The assets left by an insolvent are the common pledge of his creditors. That pledge continues as 'long as there are assets to be divided.”
If the administrator and dative executor (for their relations to the creditors are the same, see 13 A. 581, 18 A. .63), are trustees for and of the creditors; if they are the judicial depositaries of the property of the estate, then it seems to follow' that their possession is that of the creditors of whom they are the mandataries.in some sort. It results further that the creditors are in possession through these trustees of the property and effects of the estate, which are their common pledge.
It is the well-settled jurisprudence of this State that possession by *856 the creditor himself, or by his mandatary, of the pledge securing his debt operates a suspension of prescription as long as that possession continues. Seo 1 R. 55C; 8 R. 145; 11 R. 183.
As long therefore as the heirs of the deceased allow the property of his.estate to remain in the custody of the administrator, the trustee of the creditors, the principle stated requires that prescription, at least and certainly so far as their debts bear upon the objects of the pledge, be suspended.
The operation of this rule is of course limited to those creditors whose claims have been duly “recognized” by the administrator, or by judgment of court; for, until recognized in one or the other way, they are not classed as creditors of the estate, to be paid concurrently therefrom. C. P. 987.
We think these views harmonize with the provisions of the Code of Practice. The 984th article of that Code provides that “ no bearer of a claim for money against a succession, etc., shall commence an action against such succession before presenting his claim to the administrator.” The art. 985 directs the mode of recognizing the claim if the administrator finds it just. Art. 986 provides that “if the executor or administrator have any objection to it and consequently refuse to approve it, the bearer of the claim may bring his action,” etc. Art. 987 declares that the creditors, whose claims have been thus recognized (i. e. by acknowledgment or judgment), can only be paid concurrently, etc. Art. 988 provides for calling together these recognized creditors, when the administrator is ready to pay the debts. Art. 989 says that as these creditors “ can only obtain payment after certain delays, interest shall be allowed on their debts,” etc. By arts. 1053 and 1054, the administrator can not be required to pay other than certain privileged debts until after the expiration of three months, even if he have funds.
We think it manifest that the law never contemplated that a creditor whose debt has been formally acknowledged should bring a suit to establish his claim. The policy of the law discourages such proceeding; would punish it by inflicting the costs thereof on the creditor. True, the law gives him after a reasonable time, which may be a few or many, but never less than three months, according as property may be sold for cash or on credit, and according as other contingencies may happen, a right to compel the administrator to account. But if the theory of the defense is correct, such a proceeding by a judgment or acknowledged creditor would not prevent prescription running against them. For if a judicial demand interrupts prescription it wmuld seem that it is only when the object of that demand is the establishment of the right of the creditor; whereas, a proceeding against an administrator for a sale of property or for an account would be one in execution of an established *857 right, rather than one in recognition of a disputed one. To illustrate, a creditor, on refusal of the administrator, proceeds by suit to obtain judicial recognition of his claim. Having obtained his judgment of recognition, he continuously for eleven years pursues the administrator to compel sales of property and accounts of administration. After ten years-of pursuit the administrator, who is his trustee, turns upon him. and says: “Your judgment is extinguished by ten years prescription; you have not cited me, and had your judgment revived.” Would it not be a full answer for the creditor to say, “You are my trustee; you hold property in your hands, put there as a pledge for my debt; your possession is my possession, and no prescription has run or can run as long as the heirs or other owners leave the pledge in your custody ?”
This was the view taken by this court in the case of. Succession of Romero, 29 A. 495. It is also the doctrine held by our own courts in -cases of “ Cessio Bonorum”’ 11 R. 348 ; 1 A. 365 ; 12 R. 155 ; 3 A. 531.
We have seen that there is no substantial reason for distinguishing between the cases of administrations of insolvent estates and those of deceased persons. In fact, insolvent successions are directed to be administered as estates of insolvents. See C. C. 1172 et seg.
We are referred by the counsel of defendant to the decision of this court in succession of Dubreuil, 12 R. 507, 516; and to that in Sevier vs. Gordon, 21 A. 373, as holding the doctrine that prescription begins to run against an acknowledged claim from the date of the acknowledgment. It is true that in the former case, on rehearing, this court so held, and that in the latter case the decision in 12 R. is referred to approvingly. On that rehearing Judge Simon, as the organ of the court, says: “We confess that the question presented is not a very clear one.” We think that in the original opinion in that case the decision, rendered by Judge Morphy as the organ of the court, is more conformed to the general principles of the law than the conclusion reached on the rehearing. Judge Morphy says: “Although under our laws no executory judgment can be obtained against a succession, the creditors are not without the means of asserting their claims and taking the necessary steps to interrupt prescription. All demands for money may be presented to the administrator, to be acknowledged by him. If the debt is admitted to be a just one, he shall write on the evidence of it a declaration which he shall sign, stating that he has no objection to the payment of such claim, after which the debtor shall submit it to the judge that it may be ranked among the acknowledged debts of. the succession. O. P. 984,985. Prom the time that this is done, which is equivalent to a judicial demand, prescription; we apprehend, must remain suspended, as the creditor can do nothing more against the estate, except it be to coerce the administrator to a prompt -settlement of the estate.” The rehearing *858 was granted solely on the ground that this opinion seemed to rest upon-a state oí facts which did not exist, to wit, that after having been acknowledged the claim had been presented to the judge to be ranked. On the rehearing stress is laid upon the fact that it was not so presented' to the judge to be ranked; and this is the ground upon which the court reversed its former decree. The whole case proceeds upon the hypothesis that had this formality been complied with, then the opinion delivered by Justice Morphy would have been correct. Now we think that after the claim has been “recognized” by the administrator, its validity as an acknowledged debt of the estate in no wa.y depends upon its being “ranked” by the judge. This last formality touches not the question of existence or validity of the claim, but its “rank” or “classification” merely. This presentation to the judge is ex parte, and no time is fixed within which it is to be made. For aught that appears in the law, this presentation to the j udge, for the purpose of ranking the claim, may well be done when the administrator presents his account. Indeed, it would seem to us that that would be the proper time, as it would' then be done in concursa and contradictorily with the other creditors. In practice such is the mode.
We therefore conclude that after a creditor of an estate has had his claim duly acknowledged by the administrator the law does not contemplate any further proceeding on his part to establish it,- as against the estate. That in principle the administrator is his trustee, and holds-in possession, for his benefit, the property of the estate, which is the common pledge of the creditors. . That the creditor is not obliged to inaugurate judicial proceedings to preserve his right whilst this state of facts continues; and until an account is rendered ignoring his claim, or the possession of the administrator terminates, prescription is suspended. We think, therefore, that the plea of prescription is not well founded.